UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| G.P.,<br><br>   Plaintiff,<br><br> v.<br><br>LELAND DUDEK[1], et al.,<br><br>   Defendants. | Case No. 24-cv-00088-VKD<br><br>**ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL; REMANDING ACTION FOR DETERMINATION OF ONSET DATE AND CALCULATION OF BENEFITS**<br><br>Re: Dkt. Nos. 19, 22 |

Plaintiff G.P.[2] challenges a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for child disability insurance benefits[3] under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423 *et seq.*, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* G.P.'s primary contentions are that the administrative law judge ("ALJ") failed to properly assess the materiality of his substance use disorder; disregarded or failed to fully credit several medical opinions; incorrectly assessed the

---

[1] Leland Dudek, the current acting Commissioner of the Social Security Administration, is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[2] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[3] The ALJ found that G.P. did not qualify for the child disability benefits requested because of his age at the time of the first record of treatment. AR 22. The remainder of the ALJ's decision focused on G.P's entitlement to SSI. G.P. does not challenge the ALJ's determination regarding child disability benefits. Accordingly, the Court does not address G.P.'s entitlement to child disability benefits.

severity of his mental impairments; and improperly rejected his subjective testimony. G.P. appeals the ALJ's decision, seeking remand for payment of benefits. Dkt. No. 19. The Commissioner agrees that remand is appropriate but contends that remand should be for further administrative proceedings, rather than award of benefits. Dkt. No. 22. G.P. did not file any reply. As both parties agree that remand in some form is appropriate, the sole question before the Court is the nature of the remand.

Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants G.P's appeal and remands this case for determination of the disability onset date and calculation of benefits consistent with this order.[4]

## I.  BACKGROUND

### A.  G.P.'s Relevant History

G.P. applied for child disability insurance benefits and SSI in 2020 at the age of 34, asserting the following conditions: bipolar disorder, epilepsy, congestive heart failure, acute renal failure, acute liver failure, slurred speech, cardiogenic shock, and left-ventricular-thrombus. AR 29, 185, 190, 311, 318, 320, 330, 359. He alleged a disability onset date of March 31, 2004. AR 104.

G.P. attended high school through the 11th grade and has not obtained a GED. AR 60-61. He does not have past relevant work. Dkt. No. 19 at 2. He lost his mother in the sixth grade and currently lives with his father. AR 1002-03; Dkt. No. 19 at 2. G.P. has a history of alcohol and methamphetamine use and was hospitalized in November 2018 for congestive heart failure and liver failure attributed to methamphetamine use. AR 715. In 2021, he lost his twin brother to heart failure. AR 1002, 1222.

G.P's applications were denied initially on December 29, 2020 and again on reconsideration on November 12, 2021. AR 182-83, 185, 190. G.P. subsequently requested a hearing before an administrative law judge and appeared at a telephonic hearing before

---

[4] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 8.

Administrative Law Judge David LaBarre on September 16, 2022. AR 54. The ALJ issued an unfavorable decision on January 18, 2023. AR 18-30.

### B.     ALJ's Decision

The ALJ found that G.P has not engaged in substantial gainful activity since March 31, 2004, his alleged disability onset date. AR 21. However, focusing on the time period for which G. P. provided treatment records, beginning in October 2011, the ALJ determined that G.P. has the following severe impairments:

> seizures/epilepsy; congestive heart failure, acute renal failure and cardiomegaly, all due to methamphetamine; left ventricular thrombus, due to methamphetamine use; major depressive disorder; other specified trauma- and stressor-related disorder; persistent bereavement disorder; generalized anxiety disorder; somatic symptom disorder, persistent, moderate; unspecified schizophrenia spectrum and other psychotic disorder; and poly-substance use disorder (alcohol and methamphetamine)

AR 22. The ALJ concluded that, with the substance use, G.P.'s mental impairments met "the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.936)." *Id.* In making this determination, the ALJ considered the four broad areas of mental functioning described in the regulations for evaluating mental impairments, known as the paragraph B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.*; *see also* 20 C.F.R. § 404.1520a(c)(3) (citing 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E). The ALJ found that G.P had moderate limitations in understanding, remembering, or applying information, and in adapting or managing oneself. *Id.* He further found marked limitations in interacting with others and in concentrating, persisting, or maintaining pace. *Id.*

The ALJ also determined that if G.P. stopped the substance use, then during the relevant time period, he would continue to have severe impairments, but not any impairment that met or medically equaled the severity of a listed impairment. *Id.* The ALJ found that, in the absence of substance use, G.P. would have only moderate limitations in each of the four paragraph B functional areas. AR 23. Based on this assessment, the ALJ found that G.P. had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," with the

following limitations:

> [G.P.] can never climb ladders, ropes or scaffolds. The claimant should avoid hazards such as unprotected heights and dangerous machinery. In addition, the claimant should avoid exposure to vibration; and avoid concentrated exposure fumes, dust, odors, gases and poor ventilation. The claimant can perform low stress work, which is defined as simple, routine instructions and tasks involving simple work-related decisions and occasional workplace changes; brief, occasional interaction with co-workers and no interaction [with] the general public; no fast-paced work, i.e. assembly line work; and cannot perform work that requires the claimant to be responsible for the safety of others. He can tolerate a moderate noise intensity level as defined in the Dictionary of Occupational Titles/Selected Characteristics of Occupations in the DOT. He must avoid concentrated exposure to extreme heat. Finally, he would be absent once per month.

AR 24. The ALJ found that G.P. has no past relevant work but that, if he stopped the substance use, he can perform at least three jobs that exist in significant numbers in the national economy: hospital cleaner, photocopying machine operator, and advertising material distributor. AR 29. The ALJ concluded that G.P. "would not be disabled if he stopped the substance use," and that his "substance use disorder is a contributing factor material to the determination of disability," and that he had not been disabled "at any time from the alleged onset date through the date of this decision." AR 30; *see* 42 U.S.C. § 1382c(a)(3)(J) ("[A]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.").

The Appeals Council denied G.P.'s request for review of the ALJ decision. AR 1. G.P. then filed the present action seeking judicial review of the decision denying his applications for benefits. *See* Dkt. No. 1.

## II.  LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context,

the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citations and quotations omitted). The claimant bears the burden of proof at "steps one through four, but [the burden] shifts to the Commissioner at step five." *Mercado v. Berryhill*, No. 16-cv-04200-BLF, 2017 WL 4029222, at *4 (N.D. Cal. Sept. 13, 2017) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

In cases involving substance use, the ALJ is required to apply the five-step sequential disability analysis twice. Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, at *6 (Feb. 20, 2013); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). At the first stage of the analysis, the ALJ conducts the five-step sequential analysis and determines whether the claimant is disabled based on all of the claimant's medically determinable impairments, including substance use disorders. *Bustamante*, 262 F.3d at 955; SSR 13-2p, 2013 WL 621536, at *6. If the ALJ finds

1  that the claimant is disabled, then the ALJ applies the five-step sequential inquiry a second time to
2  determine whether substance use is "material" to the disability determination. "'Materiality' is the
3  degree to which an individual would still be found disabled if they stopped using drugs or
4  alcohol." *Jessie L. v. Kijakazi*, No. 20-cv-09305-DMR, 2022 WL 2222964, at *2 (N.D. Cal. June
5  21, 2022); 20 C.F.R. § 416.935(b). Implementing regulations require an ALJ to "determin[e]
6  which of the claimant's disabling limitations would remain if the claimant stopped using drugs or
7  alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see also* 20 C.F.R. § 416.935(b)(1)
8  ("The key factor we will examine in determining whether drug addiction or alcoholism is a
9  contributing factor material to the determination of disability is whether we would still find you
10 disabled if you stopped using drugs or alcohol."); SSR 13-2p, 2013 WL 621536, at *4 (same).

11       If the Court determines that there has been reversible legal error, the Court must then
12 decide whether to remand for further proceedings or for an automatic award of benefits. "An
13 automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the
14 well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).
15 The Court may remand for an immediate award of benefits under the credit-as-true standard only
16 where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether
17 claimant testimony or medical evidence; (2) there are no outstanding issues that must be resolved
18 before a determination of disability can be made; and (3) it is clear from the record that the ALJ
19 would be required to find the claimant disabled were such evidence credited. *Id.* at 1045. Even
20 when all three conditions are satisfied and the evidence in question is credited as true, it is within
21 the district court's discretion whether to make a direct award of benefits or to remand for further
22 proceedings, when the record as a whole creates serious doubt as to disability. *Id.*

23 **III.   DISCUSSION**
24       The parties agree that this matter should be remanded because the ALJ's opinion contains
25 reversible error. *Ryan B. v. O'Malley*, No. 23-cv-03644-SI, 2024 WL 4227590, at *3 (N.D. Cal.
26 Sept. 17, 2024). The parties disagree about whether the matter should be remanded for further
27 proceedings, as the Commissioner contends, or whether this is the rare case which merits the
28 automatic award of benefits under the credit-as-true-standard, as G.P. contends. *See Leon*, 880

F.3d at 1044.

### A. Legally Sufficient Reasons for Rejecting Evidence

The parties agree that the ALJ erred by adopting, without explanation, an RFC that does not fully account for the medical opinions that he found persuasive—specifically, the medical opinions of Dr. Mary Ann Vigilanti, an independent psychological consultant, and Dr. Nadine J. Genece, an agency medical consultant.[5]  Dkt. No. 19 at 8-11, 18-19; Dkt. No. 22 at 4-5.

Dr. Vigilanti conducted a psychological evaluation of G.P. on September 1, 2021, after which she diagnosed him with major depressive disorder, generalized anxiety disorder, somatic symptom disorder, and another trauma-related disorder.  AR 1002-05.  She observed that "[h]e did not present as under the influence of substances" but "was alert and aware."  AR 1003.  Dr. Vigilanti found that G.P. had the following limitations: (1) moderate to severe impairment in persistence and pace in a work setting; (2) moderate impairment in "respond[ing] appropriately to coworkers, the public, and supervisors"; (3) severe impairment regarding the "ability to tolerate routine changes in a work setting, the stress of an 8-hour workday and respond with flexibility"; and (4) anticipated unreliable attendance in the workplace.  AR 1004.

Dr. Genece conducted an assessment of G.P. through a psychiatric review technique (PRT) on November 8, 2021 as part of the reconsideration process of G.P.'s application for benefits.  AR 143.  Dr. Genece considered three listed disorders—12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders) and 12.15 (trauma and stressor-related disorders)—but concluded that G.P's "medically determinable impairment" did not "precisely satisfy the diagnostic criteria" for any of them.  *Id.*  Applying the paragraph B criteria, Dr. Genece found that G.P had mild limitations in understanding, remembering or applying and moderate limitations in interacting with others, concentration, persistence and pace, and the ability to adapt and manage himself.  AR 143-44.  She also found that G.P. had moderate limitations in

---

[5] G.P. also argues that the ALJ erred in rejecting the opinion of Dr. Nicole Kirsch, an independent psychological consultant.  Dkt. No. 19 at 11-14.  The Commissioner does not respond to this argument.  Regardless, given the Court's determination that the opinions of Dr. Vigilanti and Dr. Genece support a finding of disability, the Court does not consider whether the ALJ erred in his assessment of Dr. Kirsch's opinion.

1 his ability to "perform activities within a schedule, maintain regular attendance, and be punctual 2 within customary tolerances"; "complete a normal workday and workweek"; "perform at a 3 consistent pace without an unreasonable number and length of rest periods"; "interact 4 appropriately with the general public"; "get along with coworkers or peers without distracting 5 them or exhibiting behavioral extremes"; and "respond appropriately to changes in the work 6 setting." AR 148-51.

7 The ALJ described both opinions as persuasive and relied heavily on them in his assessment of G.P's disability claims, particularly regarding G.P's remaining impairments in the absence of substance use. AR 27-28. In fact, the ALJ exclusively cited to Dr. Vigilanti's opinion in support of his assessment of the paragraph B criteria in the absence of substance use. AR 23. Similarly, for the RFC determination, the ALJ explained that he "relie[d] for the most part on the opinions of State agency medical consultant[] . . . Dr. Nadine Genece," as well as "the assessment of Dr. Vigilanti in reaching the mental RFC adopted herein." AR 27-28. However, despite indicating his reliance on these opinions, the ALJ did not include all of the limitations assessed by Drs. Vigilanti and Genece in his determination of G.P.'s RFC. As both parties observe, the RFC does not reflect G.P's inability to tolerate workplace stress and to reliably attend work, as found by Dr. Vigilanti, or the moderate limitations found by Dr. Genece. Dkt. No. 19 at 8-11; Dkt. No. 22 at 5. The ALJ did not explain why these limitations are not incorporated into the RFC.

As the parties appear to agree that the ALJ's opinion implicitly rejected certain aspects of the medical opinions he found persuasive without providing legally sufficient reasons for doing so, and therefore constitutes reversible error, the Court next considers whether there are any outstanding matters that should be resolved by further administrative proceedings.

### B. Whether Further Administrative Proceedings Are Warranted

In evaluating whether further proceedings are warranted, the Court "consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Ryan B.*, 2024 WL 4227590, at *6 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)). G.P. argues that the Court should remand for payment of

1    benefits because the record is well-developed and "there are no outstanding issues of fact which

2    would be resolved by another hearing." Dkt. No. 19 at 20. The Commissioner argues that several

3    issues remain to be resolved on remand and suggests that the existing record casts doubt on

4    whether G.P. is disabled. Dkt. No. 22 at 5-7. G.P. did not reply to the Commissioner's

5    arguments.

### 1.  Vocational Expert Testimony

The Commissioner argues that even if the ALJ had adopted more restrictive limitations in the RFC, there may still be jobs G.P. could perform. Dkt. No. 22 at 5. This argument is not supported by the record. At the hearing, the vocational expert testified as follows:

> Q: . . . And if you further add to the hypothetical that the hypothetical individual would be absent twice per month, and then can have no interaction with the general public, can that hypothetical individual perform any work in the national economy?
> A: No, Your Honor.
> …
> Q: . . . And is what takes it out of the employability area, is it the absences or a combination of everything together?
> A: Well, either of those factors or the two factors together would eliminate all employment, Judge.

AR 90-91. Thus, the vocational expert testified that with just one more absence per month, or with a restriction that he have no contact with the public, G.P. would not be able to maintain employment. As the Commissioner concedes, one absence per month does not adequately capture the limitations assessed by Dr. Vigilanti and Dr. Genece. Dkt. No. 22 at 5. On this point, at least, the record is fully developed, and there is no dispute of fact to be resolved. While there may be other factual disputes that bear on other aspects of the RFC, there is no need to remand for further administrative proceedings if, as the record reflects, G.P.'s expected absences, in combination with other limitations in the RFC, would render him unable to perform any work in the national economy. *See Tennille S. v. Kijakazi*, No. 21-cv-09779-SI, 2023 WL 122396, at *13 (N.D. Cal. Jan. 6, 2023) ("The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true.").

### 2. Materiality of Substance Use

The Commissioner also argues that G.P. "has not effectively shown why the ALJ's [substance use] analysis was incorrect" and that "[t]he record contains evidence that shows that G.P.'s function both physically and mentally was better when sober."[6] Dkt. No. 22 at 6. The Commissioner contends that "[t]he impact of this substance use is critical to the disability determination" and "cast[s] doubt over [G.P's] entitlement to benefits." *Id.* at 5-6.

The Court does not understand the Commissioner to argue that additional fact-finding or development of the record is required to assess whether G.P.'s substance use is material to the determination of disability. *See Albert B. v. Kijakazi*, No. 5:22-cv-00865-EJD, 2023 WL 6462856, at *7 (N.D. Cal. Sept. 29, 2023) (finding remand with benefits appropriate where, *inter alia*, the record was "fully developed" and "neither party argue[d] that additional opinions would be necessary to resolve" outstanding issues). Rather, the Commissioner appears to contend that even if the medical opinions of Drs. Vigilanti and Genece were fully credited, the ALJ could still reach the same conclusion regarding materiality if the matter were remanded for further proceedings. Dkt. No. 22 at 5-6.

The Commissioner is correct that G.P. bears the burden of proving that his substance use is not a material contributing factor to his disability. *See Parra v. Astrue*, 481 F.3d 742, 744-745 (9th Cir. 2007). However, to the extent the Commissioner suggests that improvements in G.P.'s physical and mental health during periods of sobriety show, or at least could support a finding that, G.P.'s substance use was material, the Court disagrees. Improvement alone is insufficient; rather, the question is whether G.P.'s functioning during periods of sobriety improved to the point that he would not be disabled. SSR 13-2p, 2013 WL 621536, at *8 ("DAA is material if the claimant's other impairment(s) would improve to the point that the claimant would not be disabled in the absence of DAA."). In considering this question, the ALJ must resolve "which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra*, 481 F.3d at 747. "Especially in cases involving co-occurring mental disorders, the

---

[6] The Commissioner also challenges G.P.'s assertion that the ALJ erred in rejecting his subjective testimony. Dkt. No. 22 at 6. However, the Court need not reach this issue.

documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated." SSR 13-2p, 2013 WL 621536, at *12. "Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended." *Id.*

Here, the record reflects, and the parties appear to agree, that G.P. did not use drugs or alcohol for approximately two years from 2019 to 2021.[7] Dkt. No. 19 at 2; Dkt. No. 22 at 5; *see, e.g.*, AR 1033 (12/1/2018) ("[G.P.] says he has not done meth since he was discharged."); AR 1242 (9/11/2019) ("Former methamphetamine user, began [] around age 17-18, stopped completely after 11/2018 (was in the ICU)"); AR 1232 (10/16/2019) (drug and alcohol use disorder "in early or sustained remission"); AR 851 (4/7/2020) ("Pt denies using drugs now. Denies using alcohol or smoking."); AR 1297 (10/5/2020) ("Quit methamphetamine use since 11/2018 when he was hospitalized"); AR 1049 (5/28/2021) ("PT says he has not been doing drugs now. No alcohol use now."); AR 1003 (9/1/2021) ("[G.P] did not present as under the influence of substances."). Indeed, the ALJ cited Dr. Vigilanti 's assessment that G.P. was not using substances in relying on Dr. Vigilanti's opinion to determine G.P.'s mental limitations in the absence of substance use. AR 28 ("Most notably, in finding the limitations adopted herein, Dr. Vigilanti noted the claimant did not appear to be under the influence of any substances. The foregoing is consistent with the claimant's report that he had been sober from amphetamine and alcohol use at the time of the examination.").

As explained above, if the two opinions the ALJ found persuasive—Dr. Vigilanti's and Dr. Genece's—are fully credited and the limitations identified in those opinions are fully accounted

---

[7] On G.P.'s disability determination explanation form at the reconsideration level, the findings of fact and conclusions of law contain an entry dated 8/6/2021 that appears to be notes from one of the reviewers. AR 141. Among other notes, the reviewer states that G.P. "continues to use meth." The ALJ does not refer to this record, and neither party addresses it. Moreover, it is not entirely clear from the context of the reference whether this is referring to his past use of methamphetamine or a current use of this drug, especially given the information provided in the disability determination explanation as a whole.

11

for in the RFC, the record reflects that, even during his period of sobriety, there were no jobs G.P. could perform in the national economy. Thus, because G.P. would be disabled even in the absence of substance use, his substance use is not material to the disability determination in this case according to the applicable regulations. *See* 20 C.F.R. § 416.935(b)(1); SSR 13-2p, 2013 WL 621536, at *4.

*** 

Accordingly, the Court concludes that no further development of the record or other administrative proceedings are necessary and denies the Commissioner's request for remand on this ground.

### C.     Time Period for Award of Benefits

One outstanding question remains to be addressed on remand: the time period for which G.P. is entitled to an award of benefits.

G.P. alleged a disability onset date of March 31, 2004. However, the ALJ found that there were "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" before the "first record of treatment . . . in October 2011." AR 22. While the ALJ appears to have rejected the disability onset date of March 31, 2004, he did not make any finding regarding an alternative disability onset date (with or without substance use), and the parties do not address this issue in their respective briefs. While there is no indication that the ALJ found the record ambiguous with respect to G.P.'s disability onset date, remand is necessary so that the date of onset can be determined in the first instance. *See Nixon v. Astrue*, No. 07-cv-1234 BTM (CAB), 2008 WL 2705164, at *6 (S.D. Cal. July 8, 2008); *see also* Social Security Ruling ("SSR") 18-01p, 2018 WL 4945639 (Oct. 2, 2018).

### IV.    CONCLUSION

For the reasons explained above, G.P.'s appeal is granted. The Court reverses the ALJ's decision and remands the matter for determination of the date of onset of G.P.'s disability and for calculation of benefits.

The Clerk shall enter judgment accordingly and close this file.

//

12

**IT IS SO ORDERED.**

Dated: March 28, 2025

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge